**UNITED STATES of America,
Plaintiff,**

v.

**LEHIGH VALLEY COOPERATIVE
FARMERS, INC., Defendant,**

**Jacob H. Bross et al., Applicants for
Intervention.**

**Civ. A. No. 68–1988.**

United States District Court
E. D. Pennsylvania.

Dec. 30, 1968.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Willis F. Daniels, Daniels & Swope, Harrisburg, Pa., Robert G. Tallman, Butz, Hudders & Tallman, Allentown, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

This is a petition to intervene in an action commenced by the Secretary of Agriculture pursuant to 7 U.S.C. § 608a (6) to enforce against the Lehigh Valley Cooperative Farmers an Order of the Secretary, No. 2, Subsections (c–1) and (c–2), 7 C.F.R. 1002.66. Petitioners are all individual milk producers and members of the Cooperative (milk handlers), which acts as the agent of the individual producers to process and market milk supplied to it.

The Order which the Secretary seeks to enforce was made pursuant to regulations promulgated by him to effectuate the purposes of the Agricultural Marketing Act of 1937 by providing for adjustment of prices paid by handlers to producers.[1] The effect of the order would be to compel the handlers cooperative to pay $97,072.05 into the Producers Settlement Fund, the mechanism created by the Secretary to implement adjustments in prices paid to producers. If the cooperative is compelled to pay the amount due the Settlement Fund, the cooperative will have less money to pay the producers for milk that they have shipped to it. Therefore, if they are permitted to intervene, it would be the contention of the producers that enforcement of Order No. 2 would deprive them of the rightful proceeds for milk that they shipped, and that regulations (c–1) and (c–2)[2] exceed the authority given

1. The validity of these procedures in similar instances has been considered and affirmed by the Supreme Court in United States v. Rock Royal Co-op, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942); and Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944).

2. "§ 1002.66 Computation of the uniform price.
"The market administrator shall, on or before the 14th day of each month, audit for mathematical correctness and obvious errors the report submitted for the preceding month by each handler. If the unreserved cash balance in the producer settlement fund to be included in the computation is less than two cents per hundredweight of pool milk on all reports, the report of any handler who has not made payment of the last monthly pool debit account rendered pursuant to § 1002.76 shall not be included in the computation of the uniform price. The report of such handler shall not be included in the computation for succeeding months until he has made full payment of outstanding monthly pool debits. Subject to the aforementioned conditions, the market administrator shall compute the uniform price in the following manner:
"(a) Combine into one total the net pool obligations of all handlers;

"(b) Subtract the total of payments required to be made for such month by § 1002.81;
"(c) Add the total payments required to be made by handlers for such month pursuant to § 1002.84;
"(c–1) Subtract for each of the months of March, April, May, and June an amount computed by multiplying the total hundredweight of pool milk for the month by 10 cents in March, 20 cents in April, and 30 cents in May and June. For 1967 only the rate of deduction shall be 23 cents for April and 33 cents for May and June.
"(c–2) Add for the months of August, September, and October, respectively, an amount representing 25 percent, 30 percent, and 30 percent of the aggregate amount subtracted pursuant to paragraph (c–1) of this section for the prior period of March-June, and for November add the remainder of the amount subtracted pursuant to paragraph (c–1) of this section and the interest earned on the aggregate fund.
"(d) Add the amount of unreserved cash in the producer settlement fund;
"(e) Subtract an amount equal to not less than eight cents nor more than nine cents per hundredweight of pool milk to provide against the contingency of errors in reports and payments or of delinquencies in payments by handlers; and

the Secretary under § 608c(5) (A) of the Act, or in the alternative, that the Act delegates excessive discretion to the Secretary.

■ We have decided to deny the producers leave to intervene because we think that Congress wished to have the 608a(6) enforcement action to be unencumbered by contests of the legality of orders. Congress's desire to prevent the intrusion of collateral issues which might delay the enforcement of orders of the Secretary is apparent from the circumscribed jurisdiction given the district court under § 608a(6), and the explicit inclusion of a separate administrative procedure for contesting the legality of orders of the Secretary. Under § 608a (6), this Court is given "jurisdiction specifically to enforce, and to prevent and restrain any person from violating any order [issued by the Secretary] * * *." If a handler is aggrieved by an order of the Secretary, he may pursue an administrative remedy pursuant to 7 U.S.C. § 608c(15) (A). Under that section, a party desiring to contest the legality of such an order is given the right to petition and to a hearing before the Secretary.[3] After the ruling of the Secretary is entered the District Courts are vested with jurisdiction to review the Secretary's ruling. 7 U.S.C. § 608c(15) (B)[4]. It is explicitly provided, however, that the pendency of administrative or judicial review of the legality of the Secretary's Order " * * * shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a(6) of this title." (i. e. the enforcement procedure in the instant case).

In United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1946), the Supreme Court held that the handler could not contest the legality of the Secretary's Order, in the 608a(6) enforcement proceeding, but must first exhaust his administrative remedy provided for in 608c(15) (A) before the district court had jurisdiction pursuant to 608c(15) (B) to hear challenges to the legality of a marketing order or ad-

"(f) Divide the result obtained in paragraph (e) by the total pounds of pool milk delivered by dairy farmers but this shall not include skim milk subject to the fluid skim differential received from dairy farmers at partial pool plants or partial pool units. The result shall be known as the uniform price."

3. "(15) (A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law."

4. "(B) The District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. Service of process in such proceedings may be had upon the Secretary by delivering to him a copy of the bill of complaint. If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. The pendency of proceedings instituted pursuant to this subsection (15) shall not impede, hinder, or delay the United States or the Secretary of Agriculture from obtaining relief pursuant to section 608a (6) of this title. Any proceedings brought pursuant to section 608a(6) of this title (except where brought by way of counterclaim in proceedings instituted pursuant to this subsection) shall abate whenever a final decree has been rendered in proceedings between the same parties, and covering the same subject matter, instituted pursuant to this subsection (15)."

ministrative action taken thereunder. The rationale of its decision, as elaborated by Mr. Justice Frankfurter at 329 U.S. 292–293, 67 S.Ct. at 209 was essentially that Congress did not want enforcement of the Secretary's orders to be obstructed by allowing enforcement proceedings to be enlarged into contests of the legality of orders, and therefore provided a separate procedure for contesting the legality of orders:

"The procedure devised by Congress explicitly gave to an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control. In addition, if the Secretary fails to make amends called for by law the handler may challenge the legality of the Secretary's ruling in court. Handlers are thus assured opportunity to establish claims of grievances while steps for the protection of the industry as a whole may go forward. Sections 8a (6) and 8c(15) thus form a complementary procedural scheme. Contrariwise, it would make for disharmony to extrapolate from these provisions of the statute the right to consider independently, in a proceeding by the Government for the enforcement of the Secretary's order, questions for which Congress explicitly furnished the handler an expert forum for contest with ultimate review by a district court.

"The situation before us indicates how disruptive it would be to allow issues that may properly come before a district court in a proceeding under § 8c(15) to be open for independent adjudication in a suit for enforcement under § 8a(6). * * * In large measure, the success of this scheme revolves around a 'producers' fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we here find. That Congress avoided such hazards for its policy is persuasively indicated by the procedure it devised for the careful administrative and judicial consideration of a handler's grievance."

■ Clearly, then, the handlers, in this instance the Lehigh Valley Cooperative Farmers, cannot contest the legality of the Secretary's action in this enforcement action under § 608a(6). The individual producers, however, assert that they are not bound by the restrictions placed on their agents, the handlers, and seek leave to intervene to contest the legality of the Secretary's Order. They rely first on Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944). In that case the Supreme Court held that although the Agricultural Marketing Act did not specifically provide an administrative or judicial remedy for producers aggrieved by an order of the Secretary, the producers had standing to challenge the legality of such an order in the district court. The Supreme Court stated further on the same point in *Ruzicka* that:

"We are dealing here solely with the rights of handlers. This is not Stark v. Wickard, 321 U.S. 288 [64 S. Ct. 559, 88 L.Ed. 733.] In that case it was concluded that since Congress had provided no administrative remedy for a producer to review the legality of an order against him, presumably the courts were not closed to him. But by § 8c(15) Congress has made precisely such provisions for

handlers. As to them the procedural scheme is complete." 329 U.S. at 295, 67 S.Ct. at 210.

The producers assert that since under *Stark* they are granted standing to contest the legality of the Secretary's orders, and since they will be directly affected by enforcement of the Order, that they should be permitted to intervene to settle the entire matter in the instant action.

Secondly, the producers assert that if they are not permitted to intervene in this action, they will be required to bring a separate action and regardless of the outcome of that action will be without the use of nearly $100,000 until the legality of the Secretary's Order is finally adjudicated.

 We fully sympathize with the predicament of the producers in contesting the legality of an order which will restrain the payment of money to them while awaiting the outcome of litigation. However, we think that the reasons why handler-cooperatives are precluded from contesting the legality of the Act apply equally as well to the producers. The statutory scheme delineated above and the *Ruzicka* opinion make it clear that Congress desired to have the 608a(6) enforcement action unencumbered by contests of the legality of the Act, and it therefore provided for a separate procedure for contests of the legality of the Act.[5] To allow the producers, who in many cases may be closely affiliated with their agents, the handlers cooperative, to contest the legality of the order in this action, would be to read these limitations out of the Act.

The *Stark* case, cited by the producers, merely states that under some circumstances the producers can have access to court to contest the legality of an order of the Secretary which directly affects them. But the mere grant of standing to raise certain issues does not entitle the producers to intervene and raise those issues in an action which Congress has limited to enforcement of the Secretary's Order. The producers can not stand in a more privileged position than their agent, the cooperative. Benson v. Schofield, 98 U.S.App.D.C. 424, 236 F.2d 719 (1956). Intervention is not proper to litigate an issue or issues which do not exist or are not available in an action between the original parties. Slusarski v. United States Line Co., 28 F.R.D. 388 (D.C.1961); True Gun-All Equipment Corp. v. Bishop International Eng. Co., 26 F.R.D. 150 (D.C.1960); United States for Use of Ward Construction Service, Inc. v. United States Fidelity and Guaranty Company, D.C., 26 F.R.D. 568 (1960).

Finally, the producers have urged us that, contrary to *Ruzicka* and the other authority cited above, recent decisions of the circuit courts have concluded that in 608a(6) actions, this court possesses residual discretion to consider defenses such as those which they propose to raise here. See United States v. Brown, 331 F.2d 362 (10th Cir. 1964); United States v. Tapor-Ideal Dairy Company, Inc., 283 F.2d 869 (6th Cir. 1960). In *Brown*, the Tenth Circuit held that in a 608a(6) action the defendant could be heard on the question of whether he is indeed a handler subject to regulation or not. Similarly, in *Tapor-Ideal*,

---

5. The producers, if denied leave to intervene here are not necessarily relegated to initiating a suit of their own to vindicate themselves. If they do not feel that their agents, the handlers cooperative, are adequately presenting their assertions before the Secretary of Agriculture, they may be able to intervene pursuant to 7 C.F.R. Part 900, Sec. 900.57:

"*Intervention.* Intervention in proceedings subject to this subpart shall not be allowed except that, in the dis-

cretion of the Secretary or the presiding officer, any person (other than the petitioner) showing a substantial interest in the outcome of a proceeding shall be permitted to participate in the oral argument and to file a brief."

In this case, if the producers were permitted to intervene, participation in oral argument and filing of a brief should be fully adequate to present any arguments that the handler-cooperative fails to make.

the Sixth Circuit allowed the handler to raise the defense of accord and satisfaction.

However, we do not think that either of these cases meant to allow the handler or producer initiate a full-blown contest of legality of the Secretary's Order in the 608a(6) proceeding. The questions of whether the defendant is a handler or whether there has been accord and satisfaction are threshold questions which may be rapidly determined; it would be harsh to relegate a party to the expense of an administrative hearing if he were not a handler or had made an accord and satisfaction. But to allow contests of the legality of the Secretary's orders at this stage would as a practical matter vitiate the primary administrative review provided for by statute, and affirmed by the Supreme Court in *Ruzicka*.

## ORDER

And now, this 30th day of December, 1968, it is ordered that the petition for leave to intervene is denied.