Helen G. CHALMERS, As Executrix of the Estate of Clinton H. Chalmers, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant,

John Harvey Chalmers and Nancy Jean Chalmers Winston, Applicants for Intervention.

Civ. A. No. T–4260.

United States District Court
D. Kansas.

Nov. 27, 1967.

Wendell S. Holmes, Hutchinson, Kan., Bever, Dye, Mustard & Belin, Wichita, Kan., for plaintiffs.

Newell George, U. S. Atty., and Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., for defendant.

Brian G. Grace, of Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., for intervenors.

## ORDER ON MOTION TO INTERVENE

TEMPLAR, District Judge.

The plaintiff, Helen G. Chalmers, as executrix of the estate of Clinton H. Chalmers, deceased, filed her complaint on April 27, 1967, alleging in substance that she seeks to recover $232,069.23 of estate tax which she claims was erroneously and illegally collected and retained from her by the District Director of Internal Revenue. She further alleges that Clinton H. Chalmers died testate on August 22, 1960; that prior to his death the decedent represented to her as his spouse that it was his intent that she bear no part of the estate tax burden and that his will so provided. She did not elect to take against the will but is taking under its provisions. That a federal estate tax return was duly filed and the tax shown to be due thereon in the amount of $1,048,592.87 was paid. Thereafter, plaintiff was notified of a proposed deficiency in estate tax of $9,971.50, plus interest. This amount was paid. She further alleges that in computing the amount of the estate which passed to the surviving widow and was eligible for marital deduction, the report of the examining agent reduced the share of the gross estate passing to her by an amount of $529,282.30, which amount represents one-half of the federal estate tax determined against said estate by the revenue agent's report and such agent's report allowed as a marital deduction for property passing to the surviving spouse an amount of $1,681,422.10. That she filed a refund claim which alleged as a basis for refund that the share of the estate passing to the widow was not to be reduced or charged by any portion of the federal estate tax, since her share of the estate was eligible for the marital deduction, and caused none of the federal estate tax, and that consequently the marital deduction allowable in computing federal estate

tax should have been $2,210,704.40, instead of $1,681,422.10. She further alleges that the Commissioner erred in reducing the portion of the estate passing to the spouse and eligible for marital deduction and that in computing the estate tax liability the estate is entitled to a marital deduction of $2,210,704.40. She, therefore, demands judgment in the amount of $233,193.96.

Following the filing of this complaint and before the defendant, United States of America answered, John Harvey Chalmers and Nancy Jean Chalmers Winston, children of the deceased and beneficiaries under the will, filed a motion to intervene as defendants under Rule 24. They contended that a determination by this Court in favor of the plaintiff would adversely affect them in that they claim an interest relating to the property which is the subject matter of this action and that they are so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest. The answer they propose to file, attached to their motion for leave to intervene, alleges in substance that they deny the estate tax was improperly computed or that it is erroneously and illegally being detained from the estate of Clinton H. Chalmers, deceased. They allege that the tax was properly computed, paid and collected. They further allege that there is no competent evidence that the residual share of the estate of Clinton H. Chalmers, deceased, due and owing his widow individually, should not bear its pro rata share of federal estate tax, but on the contrary assert that the residual share of the estate belonging to the widow individually is liable for its pro rata share of federal estate tax under the laws of the State of Kansas, which provides for payment of said taxes from the residuary shares of the estate.

After this motion was filed, the United States of America answered and in effect alleges that the marital deduction as determined by the Internal Revenue Agent was properly treated and considered in making the assessment. The United States denies that it erred in reducing the portion of the estate passing to Helen G. Chalmers, eligible for the marital deduction, by any portion of the federal estate tax due from the estate of the deceased, and denies that in computing the estate tax liability the estate is entitled to a marital deduction of $2,210,704.40.

■■ It would appear that in this case both the defendant and the intervenor are contending that the marital deduction insofar as the Chalmer's estate is concerned was properly applied and considered. It also is quite obvious that a decision in this case adverse to the defendant will materially and substantially affect the rights and the property of the children of the deceased who seek intervention.

Rule 24, which authorizes intervention, provides among other things in Paragraph (a) (2) that upon timely application anyone shall be permitted to intervene in an action:

"(2) [W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Rule 24(b) further provides that upon timely application anyone may be permitted to intervene in an action:

"(2) [W]hen an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

It can scarcely be claimed that the application to intervene is not timely. Generally, it is essential that the applicant shall claim an interest in the matters in

controversy between the plaintiff and the original defendant. The purpose for which permission to intervene may be given is that the applicant may be put in position to assert in that suit a right which it has in respect to something in dispute between the original parties. There is nothing new in this rule for it merely amplifies and restates the federal practice both at law and in equity. Chandler and Price Company v. Brandt-jen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39; True Gun-All Equipment Corporation v. Bishop International Engineering Company, D.C., 26 F.R.D. 150.

Rule 24(b) (2) was intended to permit intervention when an applicant's claim or defense and the main action have a question of law or fact in common. Insofar as this question is now presented to the Court, the matter was specifically decided in the case of Pace v. First National Bank of Osawatomie, D.C., 277 F. Supp. 19 (Stanley, J.). There the plaintiff brought an action against a bank which held a deposit in the names of "Vesta Crayton or Lena F. Pace." Vesta Crayton had died after the deposit was made and plaintiff as survivor claimed the account was joint and that she was entitled to it. The bank answered, denying the account was joint and asserting the the the deposit belonged to the estate of Vesta Crayton. The administratrix of the estate of Vesta Crayton sought leave to intervene and her proposed answer alleged, as had the defendant bank's answer, that the deposit belonged, not to plaintiff Lena F. Pace, but to the estate of Vesta Crayton.

In passing on the motion to intervene, this Court determined:

"The defense of the adminstratrix to plaintiff's first count is the same as that already advanced by the defendant bank. As a result, her defense raises questions of law and fact in common with the main action, and meets the requirements for permissive intervention set out in Rule 24(b) (2) F.R.Civ. P. I can see no way, and plaintiff has

suggested none, in which the requested intervention would unduly delay or prejudice the adjudication of the rights of the original parties. Although the addition of another party may result in some delay, this must be balanced against the advantage of disposing of these two similar contentions in the same litigation. Under the facts involved in this lawsuit, the balance favors intervention."

What was said by Judge Stanley in that case fits the instant situation precisely.

Many cases support this view. See Barron and Holtzoff, Wright Edition, Vol. 2, 601. Furthermore, it has been frequently held that where the application is timely the proposition of permissive intervention is discretionary with the Court. Certainly, under the circumstances of this case, the Court in the exercise of its discretion should grant leave of these children to intervene in this action where it must be conceded should the government's position be not sustained they would be heavy losers.

The Court entertains no doubts as to the right of these children seeking intervention to do so, unless such right is prevented and foreclosed by the provisions of 28 U.S.C. § 1346(a) (1). It is true that the United States may only be sued when statutory consent thereto has been expressly granted and the terms of the consent to be sued in any court define the Court's jurisdiction to entertain that suit.

While it is contended by plaintiff that those seeking intervention can cite no case authorizing intervention in an action of this kind, the Court observes that plaintiff has not produced a case bearing directly upon the subject and considerable research by the Court has revealed none directly in point.

It should be noted that intervenors are not required to meet jurisdictional requirements as to diversity and amount in controversy where the Court's jurisdiction was established in the origi-

nal suit. See Berman v. Herrick, D.C., 30 F.R.D. 9.

The government joins with the plaintiff in strenuously objecting to the entry into the case of John Harvey Chalmers and Nancy Jean Chalmers Winston, but the government has on occasion where it suited its purpose, undertaken to bring in third parties when sued by a taxpayer for a refund of taxes paid, e. g. Joe Grasso & Son, Inc. v. United States, D.C., 42 F.R.D. 329, and though government's motion was denied, this was not because the District Court lacked jurisdiction.

■ It has been said that intervention is ancillary and supplemental to the existing litigation and, generally at least, is permitted for the purpose of permitting proper parties to enter the litigation "and present therein their rights to some title, property, res, or fund involved therein." The rule amplifies and restates the federal practice at the time of its adoption and cases decided prior thereto are apposite. See American Bowling Supply Company v. Al Martin, Inc., D.C., 96 F.Supp. 35. In the American Bowling case, intervention was denied by this Court because the movant was found to be not an indispensable party and that his claim for commission on the sale which was sued for by the principal plaintiff was not ancillary to the claim of the seller for the sale price of the property. The Court said that his complaint does not indicate that he wishes to enter the litigation for the purpose of presenting a right to some title, property, res, or fund involved therein, but that rather it shows as the Court observed during the oral argument, that he wishes to litigate, with the plaintiff in this proceeding, the issue. whether the plaintiff corporation, its predecessor and stock holders, have wilfully and fraudulently deprived his decedent of rights under a contract of employment. This was determined to be foreign to the litigation between the original parties and intervention was for that reason denied. This is sound law.

■ Wherever an applicant to intervene claims interest in matters of controversy between the plaintiff and the original defendant, intervention is permitted to allow the intervenor to be put in position to assert in the action a right which it has in respect to something in dispute between the original parties. See True Gun-All Equipment Corporation v. Bishop International Engineering Company, D.C., 26 F.R.D. 150.

The Court has examined the case of White v. Hanson, 10 Cir., 126 F.2d 559. There an action involved conflicting claims to a deceased Indian's estate and was filed in 1939, judgment was entered, appeal was perfected and prosecuted to conclusion, after remand pleadings were amended and issue joined, and case was set for trial on June 16, 1941. The intervening petitioners filed application to intervene on May 24, 1941 *proposing new and independent issues* concerning their alleged status as Indian's sole heirs at law. In the exercise of its discretion of the District Court was held not to have abused its discretion in denying application under the federal rule. Clearly, after waiting so long and then attempting to interject new and independent issues the trial court properly refused intervention. Such is not the situation in the manner before the Court here.

The Court does not pass upon the question of whether the movants are entitled to intervene as a matter of right under Rule 24(a) (2) for the reason that at this stage of the proceedings the Court cannot determine whether the representation of the applicant's interest by the government will be adequate or effective. That remains to be seen. In any event it would appear that applicant will be "bound" by the judgment should the government give up and surrender to the plaintiff, in which case, the intervenors will suffer substantially. In any event, the fact that movants are permitted to intervene will not change the law nor will it change this Court's application of the law to the facts as they are determined to

be in the litigation. Justice will be done and the judgment of this Court will be the same whether the intervenors appear or whether they do not, assuming the matter is submitted for the Court's determination. That their interests will be dramatically affected is beyond dispute. The contention that they have remedies which they should seek elsewhere is not disclosed by plaintiff or the government and is not clear to the Court. Should the government decide that it will not defend this action but compromise it, then unless intervenors are parties to the litigation, they would be helpless to prevent such action, and they would be left without any effective means of protecting their rights.

Though plaintiff's counsel view with alarm the consequences of a ruling permitting this intervention, they must be reminded that the Court has adequate facility to limit the issues which may be presented in a proceeding, or to separate issues if the hearing will be expedited, or even deny intervention where extraneous issues might be injected into the suit and threaten to disrupt the action, or run counter to the policy of the statute under which the action is brought.

Here extraneous issues do not appear and the Court can conceive of no possible disruption of the action by permitting intervention. It does not appear that there would be any delay. The Court does not believe that to permit intervention here will run counter to the policy of the statute under which the action is brought. No case has been cited so holding. It strikes this Court as manifestly unjust to deny the children of the testator the right to assist the government in the defense of this action brought by their father's second wife, whose interests are completely adverse to theirs and when they will be sufficiently "bound", or at least calculation would be required to engage in further expensive and needless litigation should the decision be against the government. This Court believes that a denial of the motion would be contrary to the declaration contained in the Federal Rules of Civil Procedure directing that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." (Rule 1)

Had the plaintiff, in order to avoid the conflict of interest which is present here, obtained under the provisions of K.S.A. 59–710 the appointment of a disinterested representative to maintain this action, the equities of the situation would be substantially different. Since this was not done, the matter must be considered from the position of the parties now before the Court. The Court has not overlooked the case of United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058. There the action was brought by a judgment creditor to recover damages from the United States for breach of its contract with the judgment debtor, and under the state law authorizing the action the judgment debtor was a necessary party to the suit. The Supreme Court was careful to point out that this action, if maintained would require the adjudication of issues between the government and a third party defendant to determine the government's liability to the third party in the first instance. The Court held that if relief was sought against others than the United States, then the suit was beyond the jurisdiction of the District Court.

Such is not the situation here, and while it is true that the United States must consent to be sued, the Court holds that it need not consent to be defended. International Mortgage & Investment Corporation v. Von Clemm, 2 Cir., 301 F.2d 857, 863.

There can be no judgment in this case against the government in favor of the intervenors. None is sought. None will be granted.

The Court rules than under Rule 24 (b) (2), since they have a common question of law and fact and an economic interest in the outcome of the suit, and certainly under the principles of equity,

John Harvey Chalmers and Nancy Jean Chalmers Winston should be permitted to intervene in this case and their motion for leave to intervene should be and it is sustained.

It is so ordered.